effected the sale, so stated, is not an allegation that she did.  She may have stated the contrary to the plaintiff.  The allegation should be that the defendant made the statement to be of any effect, leaving it to the evidence to show how she made it, or whether personally or through another.  Kranz v. Lewis, 115 App. Div. 106, 100 N. Y. Supp. 674; Harris v. Baltimore Machine & Elevator Co., 112 App. Div. 389, 98 N. Y. Supp. 440.

The judgment should be reversed and the demurrer sustained, with leave to plead over.

Interlocutory judgment reversed, with costs, and demurrer sustained, with costs, with leave to plead over on payment of costs.   All concur.

---

WEBSTER v. COLUMBIAN NAT. LIFE INS. CO.

(Supreme Court, Appellate Division, First Department.   April 23, 1909.)

1. INSURANCE (§ 17*)—FOREIGN INSURANCE CORPORATIONS—RIGHT TO DO BUSINESS—"CITIZEN."

A foreign insurance company engaged in business in New York by permission of the insurance department of the state is, so far as any litigation is concerned, a citizen of New York.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 17.*

For other definitions, see Words and Phrases, vol. 2, pp. 1164–1174; vol. 8, pp. 7602–7603.]

2. COURTS (§ 516*) — CONFLICTING JURISDICTION — ACTION IN ANOTHER STATE—INJUNCTION.

A court of equity in New York may enjoin the prosecution in another state of an action between a citizen of New York and a foreign insurance company doing business in New York by permission of the insurance department, involving the subject-matter of a previous action pending in New York.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1441; Dec. Dig. § 516.*]

3. COURTS (§ 516*) — CONFLICTING JURISDICTION—ACTIONS IN ANOTHER STATE—INJUNCTION.

The remedy of a plaintiff in an action in New York seeking to restrain defendant from prosecuting its subsequently instituted suit in a sister state concerning the same subject-matter is by an independent action, and not by motion in the action already brought.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1441; Dec. Dig. § 516.*]

4. COURTS (§ 12*)—JURISDICTION—RESIDENCE.

A resident of Massachusetts became a resident of New York and died. His wife began a suit for divorce in Massachusetts, but no decree was granted.  Subsequently she leased and moved into an apartment in New York, and declared her intention to permanently reside in New York.  It appeared that she had given her address at her mother's house in Massachusetts, but explained that she did so because she was changing hotels in New York to avoid publicity.  Held, that she was a resident of New York, and as such might sue in the courts of New York.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 12.*]

5. COURTS (§ 516*)—CONFLICTING JURISDICTION—ACTION IN ANOTHER STATE—INJUNCTION.

A Massachusetts insurance company issuing a policy in Massachusetts to a resident thereof engaged in business in New York, by permission of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the insurance department. The insured became a resident of New York and died. The beneficiary also became a resident of New York and sued on the policy. Pending the action the corporation instituted a suit in Massachusetts to restrain the prosecution of the action on the policy. *Held*, that a court of equity would enjoin the prosecution of the suit in Massachusetts, though the corporation showed that a witness competent in Massachusetts was incompetent under the laws of New York.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1441; Dec. Dig. § 516.*]

6. COURTS (§ 7*) — ACTION ON POLICY — TRANSITORY NATURE—JURISDICTION OF COURTS.
    A life policy is transitory in its nature, and on the death of insured the beneficiary may sue thereon in any state where insurer is doing business and where process may be served and of which the beneficiary is a resident.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 7.*]

7. INSURANCE (§ 137*)—LIFE INSURANCE—CONTRACTS—CONSTRUCTION.
    A stipulation in a life policy that it shall be complete only by the payment of the first premium during the good health of insured, when considered in connection with a provision that the policy shall be incontestable except for suicide committed within one year from the date of its issuance, refers only to the health of insured during the period intervening between the acceptance of the risk and agreement to issue the policy and the time when the first premium is paid and the policy is delivered.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 234; Dec. Dig. § 137.*]

Ingraham and Clarke, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Anna C. M. Webster against the Columbian National Life Insurance Company. From an order of the Supreme Court, Special Term (115 N. Y. Supp. 892), continuing an injunction obtained by plaintiff against defendant, the latter appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Joseph H. Choate, Jr., for appellant.
John J. Crawford, for respondent.

HOUGHTON, J. The defendant is a foreign life insurance company, organized under the laws of the state of Massachusetts, doing business in the state of New York. In the year 1904 it issued a policy of insurance upon the life of Everett B. Webster, then a resident of Massachusetts, in the sum of $20,000, payable on his death to this plaintiff, his wife. Differences arose between the plaintiff and her husband in the year 1906, and she went to live with her mother in the city of Lynn, Mass., and her husband came to reside in the state of New York. He died in November, 1907, and his last will and testament was admitted to probate in this state as the will of a resident citizen. Claim was made by the plaintiff as beneficiary under the policy of insurance issued by the defendant, and upon refusal to pay she brought action thereon against the defendant in the Supreme Court of the state of New York on the 4th day of February, 1908. The defendant interposed an answer, and pleaded as affirmative defense that the

policy of insurance contained the following provision and warranty, to wit:

"This contract is complete between the company and the insured only by the payment of the first premium mentioned in the policy in exchange for a receipt duly signed by the president or secretary and countersigned by the agent, provided the applicant is in good health at the time of such payment"

—and upon information and belief alleged that at the time of such payment the insured was not in good health, but, on the contrary, was suffering from a chronic and incurable disease, the nature of which was fraudulently concealed from the defendant, and the contract of insurance was never completed and the policy never became in force. On issue being so joined, the cause was placed upon the calendar of the Supreme Court of the County of New York, and when about to be reached for trial, and in January, 1909, the defendant filed a bill in equity in the Supreme Judicial Court of the Commonwealth of Massachusetts setting, forth the issuing of the policy in the state of Massachusetts, the clause therein respecting it not becoming complete unless the first premium should be paid while the applicant was in good health as above quoted, and that he was not in good health when such first premium was paid, but, on the contrary, was suffering from a chronic and incurable disease of long standing, which was fraudulently concealed from the defendant and of which it had no knowledge, and of which the insured ultimately died, and that in order to establish such fact it would be necessary to call certain physicians who treated him therefor; that by the law of the state of New York physicians were not permitted to testify as to the ailments of a patient except upon consent, and that the defendant was prohibited from transferring the cause to the United States courts by the insurance laws of the state of New York on penalty of forfeiture of the right to do business in such state; that by the laws of Massachusetts such physicians were permitted to testify without consent; and praying that the policy be decreed void and be surrendered to the defendant. Thereupon the plaintiff brought the present action in equity to restrain the defendant from prosecuting its action in the commonwealth of Massachusetts, and obtained a temporary injunction to that effect, from which the defendant appeals.

The defendant does not challenge the power of this court to restrain the defendant from prosecuting its action in Massachusetts, and properly so for it is not open to challenge.

The defendant, although a foreign corporation, is engaged in business in this state by permission of the insurance department, and, so far as any litigation is concerned, is therefore to be deemed a citizen of this state. If the plaintiff was also a citizen of this state at the time she brought her action, there can be no question that a court of equity of this state has the power to enjoin the parties from prosecuting actions in other jurisdictions concerning the same subject-matter. Edgell v. Clarke, 19 App. Div. 199, 45 N. Y. Supp. 979; Locomobile Co. v. American Bridge Co., 80 App. Div. 44, 80 N. Y. Supp. 288.

The plaintiff followed the proper practice in bringing independent action for the purpose of restraining the defendant instead of moving in the action already brought. Belasco Co. v. Klaw, 98 App. Div. 74,

90 N. Y. Supp. 593. The defendant insists, however, although it did not plead it as an affirmative defense by its answer, that the plaintiff was not at the time of the bringing of her action a resident of the state of New York, but was a resident of the state of Massachusetts. It must be conceded that her husband became a resident of the state of New York prior to his death in 1907. Although she began an action for divorce in Massachusetts in 1906, no decree appears to have been granted, and, if her husband's residence in this state did not operate to make her a resident, the proofs in the record are quite convincing that in the latter part of 1907 the plaintiff did actually become a resident of the state of New York, and was such at the time she brought her action in 1908. The establishing of a residence is largely a matter of intention, and only slight acts indicating it are necessary. The plaintiff was in New York City, and leased and moved into an apartment before she brought her action and declared her intention of permanently residing here. She fully explains why she gave her address at her mother's house in Lynn, Mass., in making proofs of death for the defendant, which were made and forwarded from New York, to the effect that she did so because she was changing hotels in the city of New York to avoid the publicity attendant upon the peculiar provisions of her husband's will, which was being probated and commented upon in the press, reporters for which sought interviews with her, and that she, therefore, thought any important communication from the defendant respecting the policy of insurance could better reach her through her mother than otherwise.

The plaintiff being a resident of the state, and it being proper to consider the defendant as also a resident, in view of its doing business here under permission of the insurance department, the facts would seem to present a case eminently proper for the intervention of a court of equity to restrain the defendant from prosecuting its action in Massachusetts to annul the policy. The defendant set up as an answer in the action on the policy in this state the precise defense which it pleads as a cause of action in the Massachusetts court, and avers that under the insurance law of the state of New York it cannot transfer the action on the policy to the federal courts, because if it should do so it would lose its right to do business in this state, and that it is necessary to swear the attending physicians of the insured respecting the incurable chronic disease from which it claims he suffered prior to and when the policy was issued, and that such physicians cannot testify in the state of New York, but can testify in the state of Massachusetts. Whatever may be the wisdom of the state of New York in prohibiting physicians from disclosing what they learn while treating a patient, it is and has long been the law that they shall not make such disclosures without consent of the patient or his representatives. Whether the law be wise or unwise, its citizens are entitled to the benefit of it, and life insurance companies doing business in this state must bear whatever burdens it imposes. It is true that the policy in question was negotiated and delivered in the state of Massachusetts, but the contract was transitory in its nature, and upon the death of the insured the beneficiary could bring action thereon in any state where the defendant was doing business and where process could be served

upon it, and of which she chanced to be a resident. She was not obliged to go to the state of Massachusetts, where it was issued, to enforce it, and she should not be compelled to go to the state of Massachusetts to uphold it. The defendant has asked and has been accorded the privilege of doing business in this state. If it does not desire to be bound by the laws of this state, it can voluntarily retire or forfeit its privilege by removing the cause to the federal court. The fact that a witness is disqualified in New York but is competent to testify in Massachusetts furnishes no reason, either legal or equitable, why the defendant should be permitted to shift a scene of contest from the less liberal to the more liberal state. But there is another reason why the defendant should be restrained from prosecuting its action in Massachusetts. The policy is set forth in the record, and in addition to the clause above quoted it contains the following:

"In contestability. This company insures only preferred risks, and the examination of the insured hereunder being satisfactory, this policy is incontestable except for suicide, whether sane or insane, committed within one year from the date thereof."

A copy of this policy is attached and made a part of the bill in equity filed in the Massachusetts court. The insured did not commit suicide within one year, and in view of this provision of the policy it is quite apparent the bill does not state facts sufficient to constitute a cause of action, and hence the action in Massachusetts must be deemed to have been brought in bad faith. The clause first quoted with respect to the insured being in good health upon delivery of the policy and payment of the first premium has no application to such chronic diseases as the insured may have had at the time of his application and medical examination. The defendant had made an examination concerning the insured which it declared in writing to be satisfactory to itself, and because it was satisfactory it agreed that it would not contest payment of the amount specified except for suicide, whether sane or insane, within one year. Agreements by life insurance companies not to contest payment of a policy must have some force, and when a company solemnly asserts that it has made all the examination it desired, and one that is satisfactory to itself, respecting the health of the insured, and therefore agrees not to contest payment in case of death, its assertion and agreement should be given effect. All that the clause respecting good health at the time of payment of the first premium can mean, in view of the other clause which immediately follows, is that, intervening the time between acceptance of the risk and agreement to issue the policy and the time when the first premium is paid and the policy delivered, the applicant shall not have been stricken with some new disease which impairs his health. Any other interpretation would render the incontestability clause absolutely meaningless and a mere snare to delude the insurer into the taking of a policy which appeared incontestable but which in fact was not. The defendant made all the inquiry respecting the health of the insured that it desired, and thereupon issued a policy incontestable for any cause except suicide within one year. It is no answer to say that very likely the Massachusetts court will uphold the policy and declare it incon-

testable and refuse to declare it void. The plaintiff, being a resident of this state and having first brought action in its court, ought not to be compelled to go to another forum to maintain her rights concerning the precise matter in litigation here.

The defendant, so far as appears, has not even the excuse of holding a waiver by the insured permitting any physician who may have attended him to testify as to what he learned concerning his ailments, such as is found in many applications for or policies of life insurance. The policy having been issued in Massachusetts to a resident of that state, such a waiver might give some color to the claim that questions concerning it should be tried in a forum where physicians were not prohibited from so testifying. But there was no occasion for obtaining a waiver, for no inquiry respecting any disease which the insured had at the time of his examination by the defendant or had had prior thereto was material, because defendant had made such inquiry to its satisfaction, and stipulated that no further contest concerning such diseases should be made, and that upon death, except by suicide within one year, it would pay the amount agreed.

The order continuing the injunction was proper, and should be affirmed, with $10 costs and disbursements.

LAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). In the year 1904 Everett B. Webster was a resident of the state of Massachusetts, and resided there with the plaintiff, his wife. In that year he applied for and obtained from the defendant, an insurance company organized and existing under the laws of Massachusetts, a policy of life insurance by which the defendant agreed to pay the amount thereof—

"upon receipt at the home office of the company in the city of Boston, of satisfactory proofs of the death of Everett B. Webster of Boston, state of Massachusetts (the insured hereunder), to Anna C. M. Webster, wife, or, in the event of her prior decease, to the insured's executors, administrators or assigns, deducting therefrom any indebtedness then existing against the policy."

The premiums upon this policy were due and payable at the home office of the company in the city of Boston. It gave to the insured the right during his life to substitute another beneficiary, and also provided that the surrender and loan values as well as the paid-up and intended insurance, were based upon section 76 of chapter 118 of the Revised Statutes of Massachusetts.

The complaint alleges that the said Everett B. Webster fully performed all the conditions of the said policy on his part, which included the payment of premiums at the home office of the company in Boston, Mass.; that the insured died on the 29th of November, 1907; and that on the 2d day of January, 1908, the plaintiff, by her attorney and agent, duly delivered at the home office of the defendant in the city of Boston satisfactory proofs of the death of the said Webster. In the proofs of death presented by the plaintiff to the defendant at his home office in the state of Massachusetts, she describes herself as residing at No. 36 Sagamore street, Lynn, Mass., which statement was duly verified by oath before a notary public on the 13th of December, 1907.

Both parties continued to reside in Massachusetts until the year 1906, when the insured seems to have abandoned his wife, he coming to New York and she going to live with her mother in the city of Lynn, Mass. The plaintiff then commenced an action for divorce against her husband in the state of Massachusetts, which action for divorce was apparently undisposed of when the insured died, in November, 1907, and his will was admitted to probate in the state of New York. In the plaintiff's affidavit it is stated that after the death of her husband she came to New York, and apparently stopped at hotels in this city, intending, as she said, to contest her husband's will, which made no provision for her. The plaintiff having made a claim for the amount of this policy of insurance from the defendant, which claim the defendant disputed, she commenced an action in the Supreme Court of the state of New York to recover the amount due on the policy, whereupon the defendant commenced an action in the Supreme Judicial Court of Massachusetts to have the policy declared void on the ground of fraud. And the Supreme Court of this state in this action has enjoined the defendant from prosecuting that action or any other action in any other state against this plaintiff affecting this policy of insurance.

We have here a Massachusetts contract, made in Massachusetts, between citizens of Massachusetts, to be performed in Massachusetts, based upon and subject to the laws of the state of Massachusetts, and which clearly contemplated that the laws of that state should control in determining the rights of the parties under it. The defendant in this action has appealed to the courts of that state to determine its rights and obligations under that contract, and the plaintiff, by acquiring what seems to me a very doubtful residence in the state of New York after her right under the contract had accrued, claims the right to enjoin this Massachusetts corporation from applying to the courts of the state of Massachusetts for the determination of its rights and obligations under this Massachusetts contract which was to be performed by it in that state. Stress is laid by Mr. Justice Houghton in his opinion upon the fact that this defendant has acquired the right to do business in this state and thus must be construed to be a New York corporation, but I know of no principle that would sustain such a contention. As between this plaintiff and the defendant, in relation to the contract in question, neither of the parties to this controversy has acquired any right or subjected itself or herself to any disability because of the right of the defendant to do business in this state. The defendant has done no business with either the plaintiff or her husband, the insured, in this state. An entirely different question would be presented if this defendant, under the right that it had acquired to do business in this state, had issued to a resident of this state a policy of insurance which had thus become a New York contract or one to be construed and enforced according to the laws of this state. But as to this contract, or the relations existing between the defendant and the plaintiff or her husband, the defendant is a foreign corporation contracting with residents of the state of Massachusetts under whose laws it was organized, and it seeks to have its liability under this contract determined by the law of the state in which the contract was made and where it was

to be performed. I cannot see that any public policy of the state of New York is involved which could have any possible effect upon this controversy, or that a citizen of Massachusetts contracting with a Massachusetts corporation can object to having the rights and obligations of the parties determined by the law of Massachusetts by coming to this state and claiming a residence here after the rights of the parties had become fixed by the happening of the contingency upon which the liability depended, and where the extent of that liability was under the contract to be determined by the laws of the state of Massachusetts. Assuming that this court has power to grant an injunction and obtained jurisdiction over the defendant by virtue of its application to do business within this state, it seems to me clear that this is a case in which the court should not exercise that power, but should leave the parties to settle their controversy in the state of Massachusetts, where the contract was made and was to be performed, and where all the parties to it resided up to the time that the rights and obligations under it became absolute. For that reason, I think the courts of this state should refuse to interfere to prevent the courts of Massachusetts from determining the extent of the defendant's liability under the contract.

I think, therefore, the order appealed from should be reversed, with $10 costs and disbursements, and the motion to continue the injunction denied, with $10 costs.

CLARKE, J., concurs.