BRONX SAVINGS BANK, Appellant, v. ANNA WEIGANDT, Respondent.

First Department, December 13, 1955.

*Jack H. Hantman* of counsel (*Major & Sintich,* attorneys), for respondent.

*Samuel M. Lane* of counsel (*Casey, Lane & Mittendorf,* attorneys), for appellant.

BERGAN, J.  On April 10, 1953, Lawrence Weigandt applied to the Bronx Savings Bank for a policy of life insurance in the amount of $2,500.  In the application he stated that he had never had or been told he had tuberculosis or any disease of the glands or of the bones, except fractured ribs; and that he was in good health.  He also said in the application that " The statements herein are true, fully and correctly recorded, and made for the purpose of inducing the Bank to issue insurance on my life."

On the same day a medical examiner for the bank made a physical examination of the applicant, noted no deformity, and regarded the applicant as being in good health. Both the written report of the physician and his testimony describe the examination as '' thorough ''. The first premium was paid and the policy issued on April 17th.

On July 20, 1953, the assured fell from the roof of the apartment building in which he lived and died as a result of injuries suffered in the fall. Autopsy disclosed active tuberculosis of the spine and of the left adrenal gland with some fibrous adhesions in the lungs. It has been established that the disease had existed when application for the policy was made and when the policy was issued.

The bank's action is against the assured's widow, the defendant here, to rescind the policy; the defendant counterclaims for recovery under the terms of the policy; and after a trial of the issues the court has found for defendant and granted judgment accordingly for the face amount of the policy.

There seems to us adequate support for the conclusion reached at Special Term that the assured did not knowingly misrepresent his state of health at the time of making the application for the policy. His wife testified that he had been in good health; that he had had no illness or injuries, except for a fracture due to accident which was disclosed in the application. The medical examiner for the bank noted no abnormality in posture or other condition which the underlying pathology might suggest; there is no proof of hospital or medical treatment for this or any similar condition; and from all this it could be found readily enough that the insured was not aware of the condition from which he was suffering and believed the statement he had made in the application that he was in good health.

A specialist in the diagnosis and treatment of tuberculosis, called by the bank as a witness, testified that the effects of disease such as that disclosed on autopsy '' may very well be not apparent ''. He added that '' [p]ain may not be present at all from the standpoint of the individual himself ''. He expressed the opinion that there might not have been enough deformity in the spine to have been noted on medical examination; or even if deformity had been noted, it might reasonably have not been assigned to the pathology which was later found.

Statements of '' good health '' or freedom from disease made in the form of a warranty '' are usually construed merely as representations and statement of opinion, since it is plain that the insured or applicant cannot speak with positive knowledge.''

LEHMAN, J., in *Sommer* v. *Guardian Life Ins. Co.* (281 N. Y. 508, 514, 515). See, also, *Grattan* v. *Metropolitan Life Ins. Co.* (92 N. Y. 274) ; *Cushman* v. *United States Life Ins. Co.* (70 N. Y. 72), and *Ames* v. *Manhattan Life Ins. Co.* (40 App. Div. 465).

The application signed by the insured contained the following agreement: " I agree that: 1. If the first premium has been paid when this application is delivered to the Bank and a conditional advance premium receipt has been issued by the Bank, the policy shall take effect as of the date of completion of the medical examination or the date of receipt of this application by the Bank if no medical examination is required, provided the Bank shall be satisfied that under its rules and standards the person to be insured was a risk acceptable to it on said date and entitled to the insurance on the plan and for the amount applied for and at the premium rate paid, and provided further that the person to be insured was in good health on said date. 2. If the first premium has not been so paid, the policy shall not take effect until the first premium is paid and the policy delivered while the person to be insured is in good health."

When we look closely at this language of the application we note some ambiguity in the interrelationship between the clause which is to be operative when the first premium is paid with the delivery of the application, and the clause to be operative when the first premium is paid later. Under familiar principles which have gained some special force applied to insurance contracts, an ambiguity in an application for insurance is commonly resolved against the insurance company to which draftsmanship is attributable.

The condition marked " 1 " may be read as stating that where the first premium is paid with the application and there has been a medical examination, it shall take effect at the time of the completion of the medical examination if the insured be then in good health and if the bank decides to take the risk.

Where a policy becomes effective upon medical examination acceptable to the insurer, the contemporaneous condition that the assured be then in good health is usually treated as an integral part of the general representation of good health by the insured. This as it has been seen, is regarded as an expression of his opinion of those matters of health and observation of the existence of diseases which would ordinarily fall within the knowledge of the ordinary person.

Clause " 2 " is part of the same general group of conditions following the words " I agree that ". It not only follows clause " 1 " in immediate sequence, but makes direct reference to

clause " 1 " by providing that if the " first premium " has not been " so " paid, the policy shall not take effect " until " the first premium is paid and the policy is delivered. This language is open to being read to mean that if there has been a medical examination in which applicant is found in good health, but the first premium has not already been paid, the policy will not take effect if there is a change in the physical condition of the applicant between the time of the physical examination and the issuance of the policy.

The words " has not been so paid " and " not take effect until " together seem to suggest an intent to relate the time of the ultimate issuance of the policy back to the time of the medical examination and to regard as important only unfavorable changes in the health of the applicant between the time of examination and the issuance of the policy.

Even when language of the application is not at all ambiguous there has been a marked tendency to construe provisions in applications for life insurance which set up as a condition precedent that the policy shall not take effect until the first premium is paid and the policy delivered " while the person to be insured is in good health " as meaning that there has been no essential physical change between the time of the medical examination and the time of the issuance of the policy.

In some jurisdictions the condition precedent is held absolute unless waived; but as Soper, J., noted for the Circuit Court of Appeals, Fourth Circuit, in *Combs* v. *Equitable Life Ins. Co. of Iowa* (120 F. 2d 432, 435) there is " a respectable body of authority " which favors the rule " that if there has been no fraud or misrepresentation on the part of the applicant, and he has been subject to a medical examination by the company and has been accepted as a satisfactory risk, the good health clause must be interpreted to refer only to changes in health occurring between the examination and delivery of the policy."

In discussing the divergence of opinion among differing jurisdictions, the opinion placed New York among the States which subscribe to this rule; and, indeed, there seems rather substantial support for the view that it has been approved in principle in this State. In *Webster* v. *Columbian Nat. Life Ins. Co.* (131 App. Div. 837, affd. 196 N. Y. 523), Houghton, J., writing for this court interpreted a clause providing that a policy shall not be complete unless the first premium is paid while the applicant is in good health as meaning " that intervening the time between acceptance of the risk and agreement to issue the policy and the time when the first premium is paid and the policy delivered the

applicant shall not have been stricken with some new disease which impairs his health '' (131 App. Div. 843).

It is true that the clause in that case was being read closely in context with a clause providing for incontestability; but as CROPSEY, J., observed in evaluating the *Webster* case in *Chinery* v. *Metropolitan Life Ins. Co.* (112 Misc. 107, 109) the rule '' has been applied to contracts that did not contain an incontestability clause ''.

The effect of such a clause in an application for life insurance was more sharply drawn in 1921 by BLACKMAR, P. J., in *Eastern Dist. Piece Dye Works* v. *Travelers Ins.* Co. (198 App. Div. 610, affd. 234 N. Y. 441). The clause, he said '' was meant to cover any substantial change between the date of the application and the payment of the first premium.'' (198 App. Div. 616.)

In construing the text of the application now before us there was ground for the Special Term to find that it was intended in the absence of fraud, and upon the making of a medical examination showing a physical condition acceptable to the insurer, to mean that the coverage would become effective upon payment of the first premium and delivery of the policy in the absence of adverse intervening change of health of the applicant between the examination and issuance of the policy.

The judgment should be affirmed, with costs.

PECK, P. J., BOTEIN, RABIN and COX, JJ., concur.

Judgment unanimously affirmed, with costs. [See 1 A D 2d 773.]