89 So.2d 641 (1956)
Sally MATHEWS, a minor, by Gladys A. Fraser, her next friend, Petitioner,
v.
METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Respondent.
Supreme Court of Florida. En Banc.
September 5, 1956.
Rehearing Denied October 15, 1956.
William D. Barfield, Jacksonville, for petitioner.
Howell & Kirby, Jacksonville, for respondent.
ROBERTS, Justice.
We here review, on certiorari, an order of a circuit court affirming a directed verdict and judgment in favor of the defendant insurance company entered in a suit on a life insurance policy filed by the plaintiff, the beneficiary thereunder, in a civil court of record.
There is no dispute as to the facts, and the sole point for determination here is whether the trial and appellate courts applied *642 the wrong rule of law in determining liability of the insurance company on the policy under the admitted facts. It is suggested by the insurance company that, since the scope of our review on common-law certiorari is limited to a determination of whether the "essential requirements of law have been followed in the judicial process" culminating in the judgment or order here reviewed, Wilson v. McCoy Mfg. Co., Fla. 1954, 69 So.2d 659, 665, this question cannot be reached by this court in the instant proceeding. But we have the view that the duty of a trial judge to apply to admitted facts a correct principle of law is such a fundamental and essential element of the judicial process that a litigant cannot be said to have had the "remedy, by due course of law," guaranteed by Section 4 of the Declaration of Rights of our Constitution, F.S.A., if the trial judge fails or refuses to perform that duty. It was so held in Mutual Benefit Health & Accident Ass'n v. Bunting, 1938, 133 Fla. 646, 183 So. 321, 330, wherein the court said: "On certiorari, we do not weigh the effect of the evidence; but we can reach it when a wrong rule of law is enforced as to its application." And, indeed, it is unthinkable that this court, in the exercise of its supervisory jurisdiction over other courts, could not compel adherence to a principle of law heretofore established by this court in the unlikely event that a trial judge should deliberately and consciously refuse to follow our decision, even though the trial judge's arbitrarily erroneous action in this respect had been approved and affirmed by a circuit court on appeal. While the principle of law here contended for by the plaintiff has not heretofore been established by this court, the distinction is simply one of degree and not in kind.
As to the merits of the controversy, the admitted facts are as follows: The plaintiff's decedent ("the insured" hereafter) applied for life insurance on January 19, 1953, and was on that date given a medical examination by the insurance company's physician. The policy was issued about two months later. The insured died on July 17, 1953, of cancer of the lung; and all the medical testimony was to the effect that he was suffering from that disease at the time of his application and medical examination and, of course, at the time the policy was issued. The insurance company contends that, in these circumstances, the policy never became effective under a clause contained in the application reading as follows: "The Company shall incur no liability under this application until a policy has been delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and continued insurability of the applicant * * *" (emphasis added), and relies on the decisions of this court in Independent Life & Accident Ins. Co. of Florida v. Roddam, Fla. 1955, 81 So.2d 221, and Gulf Life Ins. Co. v. Green, Fla. 1955, 80 So.2d 321, in support of its contention.
But in both the Roddam and Green cases the insurance was issued upon the application of one other than the insured and without a medical examination of the insured. Here, as has been noted, there was a medical examination; and a growing majority of the courts of other jurisdictions have taken the position that if there has been no fraud or misrepresentation on the part of the applicant, and he has been subjected to a medical examination by the company's physician and has been accepted as a satisfactory risk, then a "sound health" clause should be interpreted as referring only to changes in health occurring between the date of the application and examination and the date of the delivery of the policy. See the cases collected in the annotation in 136 A.L.R. beginning at page 1516; Minzenberg v. Metropolitan Life Ins. Co., 1945, 157 Pa.Super. 557, 43 A.2d 377; Gulf Life Ins. Co. v. Griffin, 1950, 80 Ga. App. 730, 57 S.E.2d 296; Bronx Savings Bank v. Weigandt, 1955, 286 App.Div. 748, 146 N.Y.S.2d 625; Brubaker v. Beneficial Standard Life Ins. Co., 130 Cal. App.2d 340, 278 P.2d 966; National Life & Accident Ins. Co. v. *643 Green, 1941, 191 Miss. 581, 3 So.2d 812, 136 A.L.R. 1510. The theory of these cases seems to be that, by examining the insured and accepting the risk based on such examination, the company has waived all future contentions as to his health at or prior to the time of the examination, and he is justified in assuming, in the absence of fraud or misrepresentation on his part, that he has obtained a valid policy of insurance upon his life. As stated in National Life & Accident Ins. Co. v. Green, supra, 3 So.2d 812:
"The examining doctor is the agent of the insurer. The knowledge gained by him is imputed to the insurer. * * * Therefore, in such case the insurer determines through its own agent the insurability of the applicant. It thereby establishes that status, and, on the condition so established through its own agent, appointed for the purpose, it accepts the risk. Under such circumstances it is but fair, reasonable, and logical to say the parties mean the insurance shall be issued and become effective unless the applicant is in worse health upon delivery of the policy than when the examination is made."
Another point of difference between the instant case and the Roddam and Green cases is that the policy considered in both of those cases provided that it should not take effect unless on the date of its delivery the insured was then "alive and in sound health." Here, the application referred to the "continued insurability" of the applicant at the time of the delivery of the policy. As pointed out in National Life & Accident Ins. Co. v. Green, supra, 3 So.2d 812, "The word `continued' naturally carried a meaning of comparative health as between the time of the examination and date of delivery of the policy." See also Mutual Life Ins. Co. of New York v. Frey, 9 Cir., 1934, 71 F.2d 259; Mutual Life Ins. Co. of New York v. Muckler, 1933, 143 Or. 327, 21 P.2d 804; Mutual Life Ins. Co. of New York v. Hoffman, 1921, 77 Ind. App. 209, 133 N.E. 405; Fidelity Mutual Life Ins. Co. v. Elmore, 1916, 111 Miss. 137, 71 So. 305, where such phrases as "`continued good health'" and "`continuance in good health'" were interpreted as relating to the representations made in the application and the medical examination as to the insured's health and as not barring recovery on a policy when the delivery thereof is made while the insured is in the same state of health as at the time of the application and physical examination.
It is well settled in this, as in other jurisdictions, that insurance policies should be liberally construed in favor of the insured; and we agree with the decisions cited above that the "continued insurability" clause may reasonably be interpreted as meaning the same state of health as at the time of the application and medical examination of the insured. Since it was conclusively shown that the insured's condition was the same at the time of the application and medical examination as at the time of the delivery of the policy, the "continued insurability" clause contained in the application did not bar recovery on the policy. No contention is made of fraud or bad faith on the part of the insured.
For the reasons stated, certiorari is granted, the order here reviewed is quashed, and the cause remanded for further proceedings consistent herewith.
DREW, C.J., and TERRELL, HOBSON, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., dissents.