392 So.2d 568 (1980)
CITY OF WINTER PARK, Florida, Petitioner,
v.
Michael D. JONES, Respondent.
No. 79-1803/NT4-90.
District Court of Appeal of Florida, Fifth District.
October 1, 1980.
Rehearing Denied February 5, 1981.
*569 Frederic B. O'Neal of Johnson, Motsinger, Trismen & Sharp, P.A., Orlando, for petitioner.
No appearance for respondent.
JOHN H. MOORE, II, Associate Judge.
In this petition for writ of certiorari the City of Winter Park seeks to quash a decision of the Circuit Court reversing respondent's conviction in county court of violating a boat registration ordinance of the City. At issue is whether the Circuit Court, in its appellate capacity, departed from the essential requirements of law by invalidating the City's ordinance as applied to non-resident boats. We hold that it did not and deny the petition for certiorari.
The respondent, a non-resident of the City, was convicted in county court of violating § 7-3 of the City's Code of Ordinances by operating his motorboat on waterways within the City without a city registration. The ordinance requires every owner of an inboard or outboard motorboat, operating upon any waterway, wholly or partly within the corporate limits of the City, to register his boat annually with the City. Section 7-4 of the ordinances provides for annual registration fees, the fees for "non-city" boats being twice the amount of those fees charged for "city" boats. According to Section 7-4(c), monies received from the registration fees are to be expended for the patrol, regulation and maintenance of the City's waterways.
The opinion which the City of Winter Park seeks to quash found that:
1. Section 371.63, Florida Statutes (1977) preempted the City of Winter Park from charging a license fee for any boat not resident in the City of Winter Park.
2. The registration fee required under Section 7-3 and 7-4 cannot stand as a user fee but was a charge restricted by Section 371.63, Florida Statutes (1977) to boats resident in the City of Winter Park.
3. The City of Winter Park does not have the authority to require non-resident boats to pay a registration fee under the provisions of Sections 7-3 and 7-4 of the City of Winter Park Code and that a boat is a non-resident boat if it is kept outside the City of Winter Park.
*570 Before we determine the validity of this order, it is necessary to discuss our jurisdiction. Review by certiorari of a decision of the circuit court acting in its review capacity is less than an entirely clear area of the law. Certiorari may not be used as a means to obtain a "second appeal". Smith v. State, 118 So.2d 792 (Fla. 1st DCA 1960). Most decisions are in agreement that certiorari review is limited to a consideration of whether the appellate (circuit) court had jurisdiction and proceeded in conformity with the essential requirements of law. If the appellate court had jurisdiction and afforded procedural due process rights to the petitioner the writ will not issue to correct an erroneous application of the law:
The writ has never been employed to inquire into the correctness of the judgment rendered where the forms of the law have been followed, and where the court had jurisdiction, and was therefore competent. Hence, it has been held that the supervisory jurisdiction of the court on a certiorari must be restricted to an examination into the external validity of the proceedings had in the lower court. It cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or on the facts of the case. The supervisory powers of the court should not be confounded with its appellate jurisdiction. 5 R.C.L., Certiorari, § 3, page 251.
Although the decisions have been in agreement as to the principle to follow, it is unfortunate that they have not been in agreement as to the application of the principle. Two excellent law review articles are recommended for a discussion of this problem. See William Haddad, Certiorari in Florida, 29 U.Fla. Law Rev. 207; Rogers and Baxter, Certiorari in Florida, 4 U.Fla. Law Rev. 477, 497. These articles note that two frequent exceptions to the "strict review" rule have been found: one allows for review where the "wrong" rule of law has been applied by the circuit court, and the second allows for review where there is a "total lack of evidence" to support the circuit court's decision. Clearly, certiorari review by the Supreme Court, and later by the district courts of appeal, has not been confined to the "strict review" originally contemplated. One writer has, we believe, correctly described what has in fact occurred:
The Supreme Court has often proclaimed that it will not review and weigh conflicting evidence, and that when there is evidence to support the finding of the lower court the judgment will not be disturbed, but it has not by any means always been ruled by the foregoing principle. On the contrary, the scope of substantive review by certiorari has often, for all practical purposes, been fully as broad as review by appeal in many of the cases, despite protestations by the Court to the contrary. (Footnotes omitted). 4 U.Fla. Law Rev. at 497, 498.
Exemplifying the departure from the "strict review" is Matthews v. Metropolitan Life Insurance Company, 89 So.2d 641 (Fla. 1956) where the Court declared:
There is no dispute as to the facts, and the sole point for determination here is whether the trial and appellate courts applied the wrong rule of law in determining liability of the insurance company on the policy under the admitted facts. It is suggested by the insurance company that, since the scope of our review on common-law certiorari is limited to a determination of whether the "essential requirements of law have been followed in the judicial process" culminating in the judgment or order here reviewed, Wilson v. McCoy Mfg. Co., 69 So.2d 659, 665 (Fla. 1954), this question cannot be reached by this court in the instant proceeding. But we have the view that the duty of a trial judge to apply to admitted facts a correct principle of law is such a fundamental and essential element of the judicial process that a litigant cannot be said to have had the "remedy, by due course of law", guaranteed by Section 4 of the Declaration of Rights of our Constitution, F.S.A., if the trial judge fails or refuses to perform that duty. It was so held in Mutual Benefit Health & Accident Ass'n v. Bunting, 133 Fla. 646, 183 *571 So. 321, 330 (Fla. 1938), wherein the Court said: "On certiorari, we do not weigh the effect of the evidence; but we can reach it when a wrong rule of law is enforced as to its application." And, indeed, it is unthinkable that this court, in the exercise of its supervisory jurisdiction over other courts, could not compel adherence to a principle of law heretofore established by this court in the unlikely event that a trial judge should deliberately and consciously refuse to follow our decision, even though the trial judge's arbitrarily erroneous action in this respect had been approved and affirmed by a circuit court on appeal. While the principle of law here contended for by the plaintiff has not heretofore been established by this court, the distinction is simply one of degree and not in kind. Id. at 641-642.
Although the Matthews decision was rendered prior to the creation of the district courts of appeal, our certiorari jurisdiction on reviewing appellate decisions of the circuit courts is the same as that exercised previously by the Supreme Court. Dresner v. City of Tallahassee, 164 So.2d 208 (Fla. 1964). Our difficulty is in defining what constitutes a departure from the essential requirements of law. Although a precise definition which would allow the bar to categorize every situation is virtually impossible, we find no better pronouncement on the subject than that contained in Smith v. State, supra, where Judge Wigginton stated:
Certiorari is a common-law writ which issues in the sound judicial discretion of the court to an inferior court, not to take the place of an appeal, but to cause the entire record of the inferior court to be brought up in order that it may be determined from the face thereof whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of law. Confined to its legitimate scope, the writ may issue within the court's discretion to correct the procedure of courts wherein they have not observed those requirements of the law which are deemed to be essential to the administration of justice. It is important, however, that the court should not broaden or extend the scope of the writ. A judgment void for lack of jurisdiction, or a proceeding characterized by a complete failure to observe essential requirements of law is subject to correction at the discretion of the court vested with the power to issue the writ. Failure to observe the essential requirements of law means failure to accord due process of law within the contemplation of the Constitution, or the commission of an error so fundamental in character as to fatally infect the judgment and render it void. Certiorari is confined to a limited review of the proceedings of an inferior jurisdiction. It is an original action in the sense that the subject matter of the suit or proceedings which it brings before the court are not there reinvestigated, tried and determined upon the merits generally as upon an appeal. (Footnotes omitted). Id. at 795.
An error must be so flagrant and of such magnitude that a party has been effectively denied his day in court before our certiorari jurisdiction will be invoked. Even though a nonfundamental error should cause reversal in the circuit court it will not prompt our certiorari jurisdiction. See, Lee v. State, 374 So.2d 1094 (Fla. 4th DCA 1979); Clermont Marine Sales, Inc. v. Harmon, 347 So.2d 839 (Fla.2d DCA 1977). Thus, the departure from the essential requirements of law necessary to invoke the jurisdiction of this Court must be of such a fundamental nature that it rises to the level of a denial of due process or so fatally infects the proceedings that the judgment cannot answer constitutional muster. This requires a case by case analysis.
We find that the circuit court adhered to the essential requirements of law in this case. Furthermore, assuming a departure, it is not such that should cause us to invoke our certiorari jurisdiction.
By adopting Section 371.62, Florida Statutes (1979), the legislature expressed its intent to establish uniform registration and licensing for all boats traveling the waters of this State. Section 371.63 then provides:

*572 All boats registered as provided herein are declared to be motor vehicles and shall be taxed and certified as motor vehicles; however, nothing in this section shall be construed to prohibit any municipality that expends money for the patrol, regulation, and maintenance of any lakes, rivers, or waters in such municipality from regulating such boats resident in such municipalities and charging them a license fee therefor. All moneys received from such fee shall be expended for the patrol, regulation, and maintenance of any lakes, rivers, or waters of such municipality.
The first portion of the statute, in requiring all boats to be taxed and certified as motor vehicles, manifestly expresses the Legislature's intent to preempt the registration of boats. Absent such preemption, municipalities may enact such legislation concerning any subject as may be necessary to the proper functioning of the municipal government. Article VIII, Section 2(b), Florida Constitution; Section 166.021(3)(c), Florida Statutes (1979). See, also, City of Temple Terrace v. Hillsborough Association for Retarded Citizens, Inc., 322 So.2d 571 (Fla.2d DCA 1975).
It is the second portion, or the proviso clause, of the statute which gives us concern. The statute is clear in its intent to allow a municipality that expends money for the patrol, regulation and maintenance of its waterways to charge a license fee for the regulation of boats resident in the municipality. It is not clear as to what was intended by use of the word "resident" in qualifying which boats are subject to the fee. The circuit court determined that a boat is not "resident" in Winter Park if it is normally kept outside the City, even though it may be operated on a City waterway. We find this ruling consistent with the statutory scheme of uniform boat registration, but in doing so, we do not intend to suggest any prohibition against imposition of a non-discriminatory user fee. That issue is not before us.
Words in statutes should be given the meaning accorded to them in common usage unless a different connotation is expressed in, or necessarily implied from, the context of the statute. Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950). The commonly accepted meaning of "resident" is one who has an abode at a given location for an extended length of time or an object which is kept at a given location for an extended time. Each is considered to be resident at the location. We have been unable to discover any usage of the word as applying to the temporary placement of an object for a short duration.
Although it may seem ridiculous for the legislature to intend that non-resident boats using Winter Park's waterways should not have to bear their fair share of the burden of patrol and maintenance, that is not what was before the circuit court. What was before the court was an annual registration fee for the period of July 1 through the following June 30th, the identical period covered by state registration. The registration is transferable to a new owner upon the sale of any registered boat and the fee is twice the amount for "non-city" boats as it is for "city" boats. It is readily apparent that this is a registration fee as opposed to a license fee or a user fee, exactly what the legislature intended to avoid by preempting annual registration.
Illustrative of the problems created by allowing each municipality to require annual registration we hypothetically pose the following vignette. A boat leaves the St. John's River in Jacksonville, travelling the intracoastal waterway to Key West. Each of the several municipalities along the way maintains patrol of the waters within its corporate limits. Did the legislature intend that each municipality could require an annual registration fee from our hypothetical boat? Can each municipality in Florida require an annual registration of every motor vehicle which comes within its boundaries merely because the City patrols and maintains the roadways? We think not.
We are compelled to the conclusion that Winter Park improperly attempted to impose an annual registration requirement on all boats, resident and non-resident, using *573 its waterways as opposed to an authorized license fee for the use of its waters. Accordingly, the trial court did not depart from the essential requirements of law and certiorari must be denied.
CERTIORARI DENIED.
JAMES C. DOWNEY and HARRY LEE ANSTEAD, Associate Judges, concur.