SHARP, Judge.
Progressive American Insurance Company petitions this court for a writ of certio-rari to review and overturn the decision of the circuit court sitting in its appellate capacity.[1] The circuit court ruled that Belch-er and Bradford, insured by petitioner, could not be required to submit to an independent medical examination by an orthopedic surgeon whose office was located in Altamonte Springs, Florida, pursuant to section 627.736(7)(a), Florida Statutes (1985), because there were qualified medical physicians and chiropractors with offices in cities closer to the insureds’ residences. We quash the circuit court’s decision because it fails to properly apply Wicker v. Hartford Accident and Indemnity Company, 404 So.2d 393 (Fla. 5th DCA 1981).
The facts in this case are not in dispute, and the issue turns simply on an interpretation and application of section 627.736(7)(a). It provides:
Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians. The costs of any examinations requested by an insurer shall be borne entirely by the insurer. Such examination shall be conducted within the city of residence of the insured. If there is no qualified physician to conduct the examination within the city of residence of the insured, then such examination shall be conducted in an area of the closest proximity to the insured’s residence. (Emphasis supplied).
The issue in this case is the proper interpretation of “an area of the closest proximity to the insured’s residence.”
The record establishes that Belcher resides in an unincorporated area of Orange County near the city limits of Winter Garden. Bradford also resides in an unincorporated area of Orange County, close to the city limits of Apopka. Both Apopka and Winter Garden have practicing medical doctors and chiropractors, but no orthopedic surgeons.[2] Respondents take the position that they cannot be required to submit to a medical examination pursuant to section 627.736(7)(a), under threat of loss of medical insurance payments,[3] in any but the geographically closest city to their residences where there are qualified physicians available. Thus, the independent medical examinations would have to be done in Winter Garden for Belcher and in Apopka for Bradford.
Although long ago Winter Garden and Apopka were considered distant from Orlando and Winter Park, now .all of these cities form part of the same metropolitan *843 area. Altamonte Springs is a relatively new city bordering Winter Park. Respondents concede that if there were no qualified physicians in Winter Garden or Apop-ka, they could be required to go to Alta-monte Springs for the examination under section 627.736(7)(a), since the distance to travel there from their residences is not unreasonable. Bradford’s treating physician’s office is located in Winter Park, 11.9 miles from his home, and the physician’s office in Altamonte Springs is only 9.4 miles from his residence. Belcher’s treating physician’s office is located 17.6 miles from her residence, and the Altamonte Springs office is only 5.3 miles farther.
Petitioner argues that if an insured does not live in a city, or if that city lacks qualified physicians, then he can be required to submit to an independent medical examination by his insurer, pursuant to section 627.736(7)(a), in any of a cluster of cities comprising the closest metropolitan area, and that the insurer is not limited to the geographically closest city. We think this is the better interpretation of the statute. Had the legislature used the term “city” of closest proximity instead of “area,” the respondents’ view would be persuasive. However, the choice of the word “area” supports petitioner’s view that metropolitan area was intended.
This also comports with the realities of Florida’s urban population patterns. Metropolitan areas increasingly are the basic urban units, encompassing many cities, and crossing county lines. The physical demar-kations between cities and even counties in such metropolitan clusters of cities have vanished.
Further, we think this interpretation of section 627.736(7)(a) is mandated by our opinion in Wicker. In that case the insured resided in Bunnell, a small town in Flagler County, where there were no qualified physicians to conduct the required medical examination. The insurer sought to have Wicker examined in Daytona Beach. She argued the exam would have to be in Or-mond Beach, because there were qualified doctors practicing there and it was geographically closer to her residence. We held that Wicker’s refusal to submit to the examination in Daytona was unreasonable because Daytona and Ormond Beach were within “the same metropolitan area nearest to Bunnell.” Id. at 393.
Since Altamonte Springs is located in the metropolitan area closest to respondents’ residences, we think the county court judge was correct in ruling that their refusals to submit to the requested independent medical examination were unreasonable. This interpretation of section 627.736(7)(a) is mandated by Wicker and is binding on all judges of this district until revisited by this court in an en banc proceeding, or overturned by the Florida Supreme Court. Failure to follow it is a departure from the essential requirements of applicable law.[4]
Accordingly, we reinstate the judgment of the county court.
WRIT OF CERTIORARI GRANTED.
DAUKSCH and ORFINGER, JJ., concur.

. Art. V, § 4(b)(3), Fla. Const.; Fla.R.App.P. 9.030(b)(2)(B).

. Neither party questions the trial court’s observation in its final judgment that “had either plaintiff lived in the city limits of Apopka or Winter Garden, the insurance company would have been required to have the I.M.E. conducted] within that city. The fact that there were no orthopedic surgeons in either city is legally irrelevant, since there were qualified physicians practicing in those localities." We therefore do not address or rule on the definition of "qualified physician" as used in the statute, or on the correctness of the trial court’s observation.

. § 627.736(7)(b), Fla.Stat. (1985); Tindall v. Allstate Ins. Co., 472 So.2d 1291 (Fla. 2d DCA 1985), review denied, 484 So.2d 10 (Fla.1986).

. Combs v. State, 436 So.2d 93 (Fla.1983); Mathews v. Metropolitan Life Ins. Co., 89 So.2d 641 (Fla.1956); State v. Wagner, 403 So.2d 1349 (Fla. 5th DCA 1981).