Kenneth B. Cuyler Collier County Attorney
QUESTION:
May Collier County enact an ordinance relating to the operation of commercial mullet vessels[1] in the waters of Collier County, Florida, which ordinance requires a safety permit for such vessels?
SUMMARY:
 Collier County is authorized to adopt an ordinance relating to the operation and equipment of vessels but such an ordinance may not require the registration of non-resident vessels nor may it regulate the taking or possession of saltwater fish.[2]
Your question deals with the regulatory power provided by the "Florida Vessel Registration and Safety Law," Ch. 327, F.S. Several sections of this chapter relate to the local regulation of vessels. Pursuant to s. 327.22(1), F.S.:
Nothing in this chapter shall be construed to prohibit any municipality or county that expends money for the patrol, regulation, and maintenance of any lakes, rivers, or waters and for other boating-related activities in such municipality or county from regulating vessels resident in such municipality or county. Any county and the municipalities located within the county may jointly regulate vessels.
The statute also authorizes counties to impose and collect an annual registration fee on vessels resident within its jurisdiction.[3] Thus, counties are authorized to regulate vessels resident in the county under the conditions prescribed therein and to impose an annual registration fee for such vessels.
Further, s. 327.60(1), F.S., states that:
The provisions of ss. 327.01-327.11, 327.13-327.16, 327.18, 327.19, 327.28, 327.30-327.40, 327.44-327.51, 327.54, 327.56, and327.65 shall govern the operation, equipment, and all other matters relating thereto whenever any vessel shall be operated upon the waterways or when any activity regulated hereby shall take place thereon. Nothing in these sections shall be construedto prevent the adoption of any ordinance or local law relating tooperation and equipment of vessels, except that no such ordinanceor local law may apply to the Florida Intracoastal Waterway andexcept that such ordinances or local laws shall be operative onlywhen they are not in conflict with this chapter or any amendmentsthereto or regulations thereunder. (e.s.)
Thus, counties may regulate the operation and equipment of vessels as prescribed by ss. 327.22 and 327.60(1), F.S.[4]
A county ordinance regulating safety equipment on commercial fishing vessels operating in the waters of the county would not appear to conflict with any provision of Ch. 327, F.S., or any amendments thereto, nor would such an ordinance appear to conflict with administrative rules promulgated by the Department of Natural Resources pursuant to this chapter.[5]
However, a permit requirement for non-resident vessels such as that you have suggested was struck down in City of Winter Park v. Jones.[6] In that case the city adopted a boat registration ordinance. The ordinance required every owner of an inboard or outboard motorboat operating upon any waterway, wholly or partly within the corporate limits of the city, to register his or her boat annually with the city. Included in the ordinance were provisions for an annual registration fee for both non-city and city boats.
While municipalities were authorized[7] at that time to impose a license fee on resident boats, the court concluded that the city was not authorized to require an annual registration requirement on all boats using its waterways:
By adopting Section 371.62, Florida Statutes (1979), the legislature expressed its intent to establish uniform registration and licensing for all boats traveling the waters of this State. . . . The first portion of the statute, in requiring all boats to be taxed and certified as motor vehicles, manifestly expresses the Legislature's intent to preempt the registration of boats.[8]
The court concluded that "Winter Park improperly attempted to impose an annual registration requirement on all boats, resident and non-resident, using its waterways as opposed to an authorized license fee for the use of its waters."[9]
Similarly, this office has determined that municipalities may not require boating licenses and impose fees therefore on all vessels operating within the limits of the city.[10] A county ordinance requiring a permit or license and imposing a fee therefor on all vessels, resident and non-resident, using county waters would appear to constitute an annual registration requirement in violation of s. 327.21, F.S.
Finally, despite the authority set forth in Ch. 327, F.S., for the adoption of ordinances regulating vessels resident in county waters, such an ordinance must not conflict with other controlling provisions of state law.[11] It is the rule that if any doubt exists as to whether there is a conflict between state and local legislation, doubt is to be resolved against the ordinance in favor of the statute.[12]
You have specifically drawn my attention to s. 370.102, F.S., and requested this office to determine whether a local ordinance such as that discussed herein requiring safety permits would conflict with this statutory provision. While the question of whether local legislation conflicts with state law is a judicial one, outside the scope of authority of this office, I would note the following.[13]
Section 370.102, F.S., provides that:
The power to regulate the taking or possession of saltwater fish, as defined in s. 370.01,[14] is expressly reserved to the state. This section does not prohibit a local government fromprohibiting, for reasons of protecting the public health, safety, or welfare, saltwater fishing from real property owned by that local government.(e.s.)
The statute clearly reserves to the state the power to regulate saltwater fishing, precluding local government authority to enact concurrent legislation.[15]
Thus, while s. 370.102, F.S., recognizes that county governments may completely prohibit salt water fishing from county property, nothing in this statute authorizes local governments to otherwise regulate the taking or possession of saltwater fish. The plain language of the statute must be read to read to mean what it says.[16]
The ordinance under consideration does not prohibit saltwater fishing on county property. However, to the extent such an ordinance directly or indirectly[17] regulates the taking or possession of saltwater fish it may conflict with the specific reservation of such authority to the state.
Therefore, while a county may adopt an ordinance regulating safety equipment on fishing vessels within county waters and may impose a permit requirement on resident vessels, it may not adopt an ordinance imposing permit requirements and fees therefor on all vessels operating within the county boundaries. Further, the county may not fashion an ordinance which, directly or indirectly, conflicts with provisions of general law to affect such things as the authority of the state to regulate the taking or possession of saltwater fish.
[1] While your letter specifically refers to commercialmullet fishing vessels you do not provide any specific rationale for limiting safety permits to these vessels and, therefore, my response deals with commercial fishing vessels generally.
[2] The discussion contained herein is of a general nature; no comment is expressed on the validity of a particular ordinance.
[3] Section 327.22(2), F.S. And see, s. 327.22(2) and (3), F.S., which provide a distribution formula for the registration fee.
[4] Cf., AGO 88-46, in which this office noted that regulations restricting boat speeds within certain areas would appear to fall within a municipality's authority to regulate the operation of vessels within its boundaries.
[5] See, Rule 16N-33.004, F.A.C., authorizing counties to impose an annual vessel registration fee pursuant to s. 327.22(2), F.S., and Rule Ch. 16N-27, F.A.C., which sets forth the Seafood Quality Control Code prescribing regulations for sanitary practices relating to the catching, handling, packaging, preserving, and storing of salt water products for sale for consumption as human food.
[6] 392 So.2d 568 (5 D.C.A. Fla., 1980).
[7] The statute authorizing municipal license fees was s. 371.62, F.S., the substance of which now is contained in s. 327.21, F.S. The current version of the statute does not contain a municipal license fee provision. But see, s. 327.22, F.S., which authorizes municipalities which imposed a registration fee before April 1, 1984, to continue to levy such a fee.
[8] Cf., 53 C.J.S. Licenses s. 9 (the power to require licenses and impose license taxes may be delegated by the Legislature to political subdivisions of the state and where done, their power to license or tax is not inherent but is wholly dependent upon and limited by the statute granting the power).
[9] Id. at 572-573.
[10] See, AGO 88-46 (city may not require boating licenses and impose fees therefor on all vessels operating within the limits of the city); AGO 80-72 (a municipality, although expending funds for the operation and maintenance of a canal within its limits, is not authorized to impose a license tax on boats operating within its limits); and AGO 65-7 (municipality incorporated under general law may not impose a municipal license tax on boats of nonresidents navigating in the navigable waters within its corporate limits).
[11] See, Campbell v. Monroe County, 426 So.2d 1158,1161 (3 D.C.A. Fla., 1983). And see, Rinzler v. Carson,262 So.2d 661 (Fla. 1972).
[12] Id. See also, City of Miami Beach v. Rocio Corporation, 404 So.2d 1066 (3 D.C.A. Fla., 1981), pet. for rev.den., 408 So.2d 1092 (Fla. 1981) (municipal ordinances are inferior to state law and must fail when conflict arises).
[13] See, Department of Legal Affairs Statement of Policy regarding Attorney General Opinions, AGO's 78-64 and 77-99 (legislation presumed constitutional and must be given effect until judicially declared invalid). Cf., Adams Packing Association, Inc. v. Florida Department of Citrus, 352 So.2d 569
(2 D.C.A. Fla., 1977).
[14] Section 370.01(2), F.S., defines "[s]altwater fish" to include "all classes of pisces, shellfish, sponges, and crustacea indigenous to salt water."
[15] See, e.g., Speer v. Olson, 367 So.2d 207, 211
(Fla. 1978) (unless the Legislature has preempted a particular subject relating to county government by either general or special law, the county governing body, by reason of s. 125.01[1], F.S., has full authority to act through the exercise of home rule power). Cf., City of Miami Beach v. Rocio Corporation,supra, at footnote 12 (although legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation enacted by municipalities may not conflict with state law).
[16] See, Carson v. Miller, 370 So.2d 10 (Fla. 1979), and Gilmore v. Civil Service Board, 528 So.2d 1271 (1 D.C.A. Fla., 1988).
[17] See, Green v. Galvin, 114 So.2d 187 (1 D.C.A. Fla., 1959), cert. denied, 116 So.2d 775 (Fla. 1959), appealdismissed, 117 So.2d 844 (Fla. 1960) (a public official cannot do indirectly that which he is prohibited from doing directly).